**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| Cheung Ching Tsoi,<br>Plaintiff,<br><br>v.<br><br>The Partnerships and Unincorporated Associations Identified on Schedule A,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br>Case No. 2:26-cv-00357-JEM<br><br>Mag. Judge John E Martin |

**Memorandum in Support of Plaintiff's Ex Parte Motion for Entry of Temporary Restraining Order, Including a Temporary Injunction, A Temporary Asset Restraint, and Expedited Discovery**

**NOW COMES** Cheung Ching Tsoi ("Plaintiff"), by and through its undersigned counsel, and submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery (the "Ex *Parte* Motion"):

## I. Introduction

Plaintiff is requesting a temporary ex parte relief based on the actions of clear copyright infringement committed by the Defendants identified in the Schedule "A" to the Complaint ("Defendants"). As detailed and elaborated in the Complaint, Defendants are using pirated copies of Plaintiff's copyrighted works (the "Plaintiff Works") to sell Defendants' own products through at least the fully interactive, e-commerce stores and online marketplaces identified within the Schedule A attached to the Complaint (the "Defendant Online Stores").

Defendants, in part, explicitly target sales to Indiana residents by setting up and operating e-commerce stores using at least the seller aliases listed on the Schedule A through which Indiana residents can purchase products being sold through the unauthorized reproduction and display of the Plaintiff Works. The purpose of Defendants operating under their seller aliases is to help conceal

their identity and obfuscate the full scope of their coordinated infringement operation. Plaintiff must file this action to combat Defendants' infringement of Plaintiff's copyrights and the irreparable injury Defendants continue to inflict on Plaintiff and its business and safeguard Indiana consumers from further purchasing specious products over the internet. Defendants' unlawful activities should be restrained. Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order, including a temporary asset restraint and allow for expedited discovery.

## II. Background

### a. Plaintiff's Business

Plaintiff specializes in the creation, manufacture, marketing, and sale of a variety of goods which are promoted and advertised using Plaintiff's registered Plaintiff Works. [Dkt. 1 at ¶ 9, 12]; [Dkt. 6 at ¶¶ 3-4]. Plaintiff is the owner of valid copyright registrations in the Plaintiff Works and has the exclusive right to market and license the right to copy, reproduce, and display the valid registered Plaintiff Works and make derivative works thereof. Id. at ¶ 11. The Plaintiff Works are indispensable to Plaintiff's business operations and Plaintiff maintains all lawful rights of title and interest in the Plaintiff Works and the rights granted therefrom. Id. at ¶ 16-17.

### b. Defendants' Unlawful Activities

Plaintiff has discovered numerous product listings on Amazon.com, including those offered by the Defendants under their seller alias, which reproduce and display copies of the Plaintiff Works without authorization. *See*, [Dkt. 1 ¶ 31]; [Dkt. 6 ¶ 6]. Further, Defendants have each successfully sold and shipped at least one product into this Judicial District from product listings featuring advertisements which incorporated the unauthorized reproduction and display of one of the Plaintiff Works. Id. at ¶ 7.

Internet storefronts like the Defendants pour billions of dollars of unauthorized and counterfeit merchandise into this Country. [Dkt. 7 ¶ 2]. Storefronts like Defendants often go to

great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Online Stores. [Dkt. 7 ¶ 7]. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Id. Such Defendant Online Store registration patterns are one of a variety of common tactics used by the Defendants to conceal their identities and the full scope and interworking of their illegal operation and to avoid being shut down. Id.

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the pirated Plaintiff Works used to sell toy products, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of infringers. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with unauthorized versions of the Plaintiff Works in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their pirating operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' pirating network, and the relationship among Defendants. If Defendants elect to provide additional information regarding their identity or information related to their business enterprises, Plaintiff will amend the Complaint as necessary.

## III. Argument

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's brand and business enterprise. Federal rules provide that this Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed R.

Civ. P. 65(b). A TRO is appropriate in this matter because it will immediately stop Defendants' use of Plaintiff's copyrights and preserve the status quo until a hearing may be held.

The TRO should be granted without notice in order to prevent further irreparable harm to Plaintiff. In the absence of a TRO without notice, Defendants can - and likely will - register new ecommerce stores under new aliases, move all of their assets to off-shore bank accounts outside the jurisdiction of this Court, and otherwise frustrate and deprive Plaintiff of any opportunity to seek equitable relief. [Dkt. 6 ¶¶ 10-11, 14]. Courts recognize that civil actions against infringers present special challenges that warrant proceeding on an *ex parte* basis. Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing products merchandise are often useless if notice is given to the infringers"). As such, Plaintiff requests that this Court issue the requested *ex parte* TRO.

This Court maintains original subject matter jurisdiction given the claims in this proceeding arise out of the Copyright Act. 17 U.S.C. § 501; 28 U.S.C. §§ 1338(a)-(b); 28 U.S.C. § 1331. Additionally, venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Indiana through at least the fully interactive, e-commerce stores operating under the seller aliases. Specifically, Defendants have targeted sales to Indiana residents by setting up and operating e-commerce stores that target United States consumers using one or more seller aliases, offering shipping to the United States, including Indiana, accepting payment in U.S. dollars and have sold and shipped a product into this Judicial District that was advertised using a Plaintiff Work without authorization. [Dkt. 1 ¶ 7]; [Dkt. 6 ¶¶ 6-8]; *See, e.g.*, Liu v. Monthly, 170 F.4th 1090, 1093 (7th Cir. 2026) ("a defendant's operation of an online store accessible in the forum state, combined with completed sales in the forum state, has been found sufficient to subject that defendant to personal jurisdiction."); NBA Props., Inc. v. HANWJH, 46

F.4th 614 (7th Cir. 2022); Monster Energy Company v. Wensheng, 136 F. Supp. 3d 897, 905 (N.D. Ill. 2015), *citing*, Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC, 2010 WL 4877708, at *7 (N.D. Ill. Nov. 23, 2010) ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant."). The Defendants are committing tortious acts in Indiana, are engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Indiana.

**a. Legal Standard**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g.*, Mayberry v. Neal, 2026 WL 2225780 at *1 (N.D. Ind. July 31, 2026) ("The standards for granting a temporary restraining order and a preliminary injunction are the same.") (internal citations omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See*, Ty, Inc. v. The Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001).

If these three conditions are satisfied then the Court must consider harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. Id. Lastly, the Court should consider the potential effect on the public interest (non-parties) in denying or granting the injunction. Id. The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant an injunction. Abbot Labs. V. Mead Johnson & Co., 971 F.2d 6, 11 (7th Cir. 1992). The "sliding scale approach" the Court should implement reasons that the more likely plaintiff will succeed on the merits, the less balance of harms need favor the plaintiff's motion. Ty, Inc., 237 F.3d at 895.

**b. Plaintiff is likely to succeed on the merits.**

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); *see also*, Peters v. West, 692 F.3d 629, 632 (7th Cir. 2012).

Here, Plaintiff is likely to succeed on the merits of his copyright infringement claim. First, Plaintiff owns all exclusive rights for copyrights of the Plaintiff Works. [Dkt. 1-1]; [Dkt. 6 ¶ 5]; See, 17 U.S.C. § 501(b) (stating legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement). Second, Plaintiff has shown that Defendants have, without authorization, made copies of and displayed the Plaintiff Works. [Dkt. 6 ¶¶ 6-8]. Defendants have directly copied the Plaintiff Works for use in the Defendants' own infringing product listings, or, alternatively, Defendants' representations of the Plaintiff Works in Defendants' product listings are strikingly similar, or at the very least substantially similar, to Plaintiff's copyrights for the Plaintiff Works and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights in direct violation of Plaintiff's exclusive rights under 17 U.S.C. § 106.

**c. There is no adequate remedy at law, and Plaintiff will suffer irreparable harm in the absence of preliminary relief.**

Plaintiff is likely to suffer irreparable harm due to Defendants blatant and unlawful acts of copyright infringement. Defendants' infringement of Plaintiff's copyright threatens the Plaintiff's established goodwill with customers and reputational harm. [Dkt. 6 ¶¶ 10-19]. While loss of goodwill is "more commonly associated with trademark cases, [ ] it is applicable to copyright as well." Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1173 (7th Cir. 1997). Thus, damage to a copyright holder's goodwill "is unquantifiable and therefore irreparable." Spinmaster, Ltd. v. Overbreak LLC, 404 F.Supp.2d 1097, 1111 (N.D. Ill. 2005); *see also*, USAHalal Chamber of Com., Inc. v. Best Choice

Meats, Inc., 402 F. Supp. 3d 427, 437 (N.D. Ill. 2019), *quoting*, Re/Max N. Cent., Inc. v. Cook, 272 F.3d 424, 432 (7th Cir. 2001) ("The Seventh Circuit has 'repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy.'"); 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). A plaintiff with a copyright infringement claim "has the right to protect their reputation as well as their sales from infringers." Spinmaster, 404 F.Supp.2d at 1111. Moreover, Plaintiff has the right to control the distribution and use of its copyrighted works, and irreparable harm flows from Defendants' unauthorized use of the Plaintiff Works. *See* Fitzgerald v. Murray, 2022 WL 4260389 at *10 (S.D. Ind. Sept. 15, 2022) ("World Wisdom has the right to control the distribution of its copyrighted materials, and irreparable harm flows from a denial of that right.").

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc., 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The Seventh Circuit and other courts have held that 'the most corrosive irreparable harm' attributable to copyright infringement is the victim's inability to control the nature and quality of the infringer's goods." Jefferson v. Johnson Publishing, Inc., 1992 WL 318615, at *2 (N.D. Ill. Oct. 28, 1992) (citing cases). As such, monetary damages are likely to be inadequate compensation for such harm. Ideal Indus., Inc. v. Gardner Bender, Inc., 612 F.2d 1018, 1026 (7th Cir. 1979). Defendants' unauthorized use of the registered Plaintiff Works has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. [Dkt. 6 ¶¶ 16-18]. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are

both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See*, Eppley v. Iacovelli, 2010 WL 3282574 at *7 (S.D. Ind. Aug. 17, 2010) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will."); Promatek Industries, Ltd. v. Equitrac Corp., 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiffs' goodwill was irreparable harm for which plaintiffs had no adequate remedy at law); Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").

Finally, because Defendants are individuals and businesses who, upon information and belief, generally reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, all monetary based judgement is highly likely to be uncollectible, which further weighs in favor of finding irreparable harm. *E.g.*, Fitzgerald, 2022 WL 4260389 at *10 ("Given the likelihood that Murray will continue violating the Plaintiffs' rights and that they will not be able to obtain monetary damages, the Plaintiffs have shown a threat of irreparable harm without an adequate remedy at law in the absence of a permanent injunction."); Aevoe Corp. v. AE Tech Co., Ltd., 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); Otter Prods. v. Anke Group Indus. Ltd., 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) ("because Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); Bushnell, Inc. v. Brunton Co., 673 F. Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd., 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) ("[B]ecause Bestwinn has no presence in the United States, it may be

difficult or impossible for NIKE to recover a money judgement against Bestwinn"). Accordingly, for the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Fed. R. Civ. P. 65(b)(1). [Dkt. 6 ¶ 19].

**d. The balancing of harms weighs in Plaintiff's favor and the public interest is served by entry of the injunction.**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. Ty, Inc., 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. This is because any harm to Defendants that could possibly result from a temporary restraining order is self-inflicted, and Plaintiff has not unduly delayed in bringing his action. Defendants took a calculated risk when they engaged in copyright infringement and their supposed "harm" should be given minimal deference.

As Plaintiff has demonstrated, Defendants have been profiting from the sale of infringing products. The balance of equities clearly leans in Plaintiff's favor. *See*, Ideal Indus., Inc. v. Gardner Bender, Inc., 612 F.2d 1018, 1025 (7th Cir. 1979) ("The existence of irreparable injury is positively supported by the fact that the alleged trademark and the infringing use are identical, that the products are the same, and that the markets are the same. These factors by themselves are indicative of irreparable injury."); National Financial Partners Corp. v. Paycom Software, Inc., 2015 WL 3633987, at *12 (N.D. Ill. June 10, 2015) (compelling evidence of consumer confusion supports a finding of irreparable harm).

Defendants will suffer no harm that was not warranted by their infringing actions if the Court grants Plaintiff's request for a temporary restraining order; Defendants "cannot complain" of being forced to cease their infringement. Warner Bros. Entm't, Inc. v. WTV Sys., 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011). Plaintiff's risk of serious irreparable harm greatly outweighs the minor harm to Defendants. Fitzgerald, 2022 WL 4260389 at *10 (noting that defendant would not be harmed by an injunction that merely required that they "stop distributing a copyrighted work upon which she is infringing."). The TRO would also be in the best interest of the public by upholding copyright protections and to safeguard consumers from further unlawful infringement on behalf of Defendants. Fitzgerald, 2022 WL 4260389 at *10 (noting that "upholding copyright protections serves the public interest."); *See also*, Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3rd Cir. 1983) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work.")

**e. Plaintiff is entitled to equitable relief.**

In addition to this Court's inherent authority to issue injunctive relief, the Copyright Act specifically authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright" 17 U.S.C. § 502. Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under federal rules this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65(d)(2)(C). The facts in this case warrant such relief.

*i. A temporary restraining order immediately enjoining Defendants' unauthorized and unlawful use of the Plaintiff's intellectual property is appropriate.*

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the Plaintiff Works on or in connection with all Defendant Online Stores. Such relief is necessary to stop the ongoing harm to Plaintiff's exclusive rights in and to the Plaintiff's Works and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the registered Plaintiff Works.

The need for *ex parte* relief is necessitated by today's global economic conditions where infringers can operate anonymously over the internet and often escape the jurisdictional reach of the authorities. Plaintiff is presently unaware of both the true identities and locations of the Defendants, as well as other ecommerce stores used to distribute Defendants' Infringing Products. Courts have often authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g.*, Iron Maiden Holdings Limited v. The Partnerships et al., No. 2:26-cv-00212-PPS-AZ, Dkt. 19 (N.D. Ind. June 2, 2026); Stones Throw Records, LLC v. The Partnerships et al., No. 2:26-cv-00125-PPS-APR, Dkt. 30 (N.D. Ind. Apr. 28, 2026); Swarovski AG v. Tseqalm Car Accessories Store et al., No. 2:26-cv-00179-GSL-JEM, Dkt. 16 (N.D. Ind. May 14, 2026); Paula Jean McHugh v. The P'ships, et al., No. 24-cv-04661 (N.D. Ill. June 6, 2024); Esther Luntadila v. The P'ships, et al., No. 24-cv-05044 (N.D. Ill. June 18, 2024); Swarovski Aktiengesellschaft et al v. The P'ships and Unincorporated Assocs. Identified on Schedule "A", Case No. 18-cv-07784 Dkt. 24 (N.D. Ill. Nov. 29, 2018); *see also* Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted.").

*ii. Preventing the wrongful transfer of assets is appropriate.*

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from its sales of infringing products is not frustrated. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may ignore their instructions from the Court and merely transfer financial assets overseas to accounts out of reach of this jurisdiction. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it simple to dispose or remove assets, which will render an accounting by Plaintiff to be ineffective and meaningless.

Courts have the inherent authority to issue prejudgment asset restraints when a plaintiff's complaint seeks relief in equity. Black & Decker Corp. v. Positec USA Inc., 118 F. Supp. 3d 1056, 1066 (N.D. Ill. 2015), *citing*, Reebok Int'l v. Marnatech Enters., 970 F.2d 552, 559 (9th Cir. 1992); Animale Grp. Inc. v. Sunny's Perfume Inc., 256 F. App'x 707, 709 (5th Cir. 2007); Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995). Plaintiff has demonstrated a strong likelihood of success on the merits of its copyright infringement claim, and Plaintiff is entitled to recover the extent of Defendants' total profits. 17 U.S.C. § 504(b). Plaintiff seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants due to their unlawful acts. LeSEA, Inc. v. LeSEA Broad. Corp., 2022 WL 621039 at *2 (N.D. Ind. Mar. 3, 2022) (noting that "a restraint on assets is available when a plaintiff seeks equitable relief[,]" and further noting that an accounting and disgorgement of an infringer's profits is an equitable remedy available in a copyright infringement case).

Courts in this circuit regularly issues asset restraining orders for entire financial accounts in cases involving the sale of products by way of copyright or trademark infringement. *See, e.g.*, Iron Maiden Holdings Limited v. The Partnerships et al., No. 2:26-cv-00212-PPS-AZ, Dkt. 19 (N.D. Ind. June 2, 2026); Stones Throw Records, LLC v. The Partnerships et al., No. 2:26-cv-00125-PPS-APR,

Dkt. 30 (N.D. Ind. Apr. 28, 2026); Swarovski AG v. Tseqalm Car Accessories Store et al., No. 2:26-cv-00179-GSL-JEM, Dkt. 16 (N.D. Ind. May 14, 2026); Paula Jean McHugh; Esther Luntadila; Pink Floyd (1987) Limited; Lorillard Tobacco Co. v. Montrose Wholesale Candies, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005), *citing*, Grupo Mexicano, de Desarrollo, S.A. v. Alliance Bond Fund, 527 U.S. 308, 325 (1999) (finding that an asset freeze was warranted when the plaintiff sought a disgorgement of profits, an equitable remedy). This Court should therefore grant Plaintiff's request for a prejudgment asset freeze limited to those funds received by Defendants from their sales of accused products, to preserve the effectiveness of the relief sought.

**f. Plaintiff is entitled to expedited discovery.**

"Federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." Vance v. Rumsfeld, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007), *quoting*, Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Courts have wide latitude in determining whether to grant a party's request for discovery. Id. (citation omitted). Moreover, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See*, Fed. R. Civ. P. 26(b)(2); Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).

Defendants go to great lengths to conceal their identities and obfuscate the scope of their operations including, without limitation, by omitting accurate identifiable information from the Defendant Online Stores. Plaintiff requires this information and, otherwise, an asset restraint would be ineffective where the bank or other payment account containing the assets was unknown. Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts which Defendants use for their illegitimate sales operations. The expedited discovery requested in Plaintiff's proposed Temporary Restraining Order is limited to include only what is essential to prevent further irreparable harm. Discovery of these sales and financial accounts so that they can be

temporarily restrained is necessary to ensure that these activities will be contained. *See, e.g.*, Deckers Outdoor Corp. v. The P'ships, et al., No. 15-cv-3249 (N.D. Ill. April 21, 2015) (Dkt. 19) (unpublished). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

**g. A bond should secure the injunctive relief.**

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc., 402 F. Supp. 3d 427, 441 (N.D. Ill. 2019). Because of the strong and unequivocal nature of Plaintiff's evidence of copyright infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g.*, Deckers Outdoor Corporation v. The P'ships, et al., No. 15-cv-3249 (N.D. Ill. April 21, 2015) (unpublished) ($10,000 bond).

**IV. Conclusion**

Plaintiff's business continues to be irreparably harmed by Defendants' businesses that are based, at least in-part, on infringement of the Plaintiff Works. Without entry of the requested relief, Defendants' infringement of the Plaintiff's copyrights in connection with the making, using, offering to sell, selling, or importing of the infringing products will continue to irreparably harm Plaintiff. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this August 12, 2026

Respectfully Submitted,

/s/Adam E. Urbanczyk
Adam E. Urbanczyk
AU LLC
444 W. Lake St. 17th Floor
Chicago, IL 60606
(312) 715-7312

adamu@au-llc.com
*Counsel for Plaintiff*